We'll hear argument next in Case 23-583, Bouarfa v. Mayorkas. Mr. DeGersen? Mr. Chief Justice, and may it please the Court, in Section 1154C, Congress unequivocally stated that no petition shall be approved if the beneficiary engaged in a sham marriage. In context, that requirement applies not just to the day of approval but to the next day as well. In other words, the petition cannot remain approved if the agency reconsiders its initial decision and concludes that there was a sham marriage. That's because an approved visa petition confers no substantive benefits. It is simply a piece of paper signifying that a beneficiary is eligible to apply for a green card. If Congress believed you shouldn't get that piece of paper saying that you're eligible when you've been in a sham marriage, then the agency has to take it away when it determines that you're not, in fact, eligible. That resolves this case. Because the revocation here was nondiscretionary, it is reviewable. The government seeks to shield itself from judicial review by claiming it has discretion to not revoke the petition, even after a sham marriage finding. Yet it identifies no circumstance in which it has ever or would ever exercise that purported discretion. Nor does it explain what purpose such discretion could serve if, as the government appears to believe, it's not actually allowed to give the beneficiary a green card. The discretion appears to simply be the discretion to allow a person to hold on to a now meaningless piece of paper that has been drained of all of its value. That cannot be the kind of discretion that Congress sought to protect. The government's view also layers one anomaly on top of another. Most significantly, it creates a disparity in review between an initial decision and a reconsideration of that same decision based on the same criteria. And the government concedes that a person could obtain review if they filed a new petition and had it denied. But that gives the game away. That is the exact same nondiscretionary decision that the government claims needs to be shielded from review. The only difference is years of additional delay where families and children live under constant fear that they will be separated. I welcome the court's questions. Does the government always revoke a decision when it discovers, later discovers, a sham marriage? Yes. We've identified no case, and the government has identified no case, where the government has ever exercised any purported discretion to not revoke. So what the government does in these situations is when they discover that there has been a sham marriage, as far as we can tell, their uniform practice is to revoke. And if you look at the actual decisions, the decisions all read like decisions that are nondiscretionary. The decision to revoke looks exactly like the decision to deny. They apply the same criteria. They use the same language. No one mentions discretion. That's a stark contrast to the kinds of decisions on adjustment of status, for example, where you see people asking the agency, could you exercise discretion? The agency says, we're not going to exercise discretion for these reasons. We've not been identified a single BIA opinion where the agency has ever talked about the possibility of exercising discretion in this situation. So it is treated as automatic in practice. Are there revocations that you think are not reviewable? Yes, absolutely. I think any revocation... What would that look like? So, for example, if the agency determines that someone is eligible and then says later on finds out this person may be affiliated with a terrorist organization or something like that, we're going to revoke that petition. We don't want them to even apply for a green card. The agency has a lot of discretion. There's a big universe of cases where the agency absolutely can exercise discretion to come up with additional reasons. But that's what Section 1155 is. It's once you've met the eligibility criteria, the agency has discretion to come up with more reasons. So it's a way of saying the agency has flexibility to deny more petitions. What it's not is, you know, gives the agency the flexibility to ignore the mandatory initial eligibility criteria and allow, I mean, what they're claiming is allow more petitions through into the system that otherwise should have been revoked if the agency had... So you're saying it has to be for a reason other than the initial reason? Right. It can't just be a reconsideration. It can't be we made a mistake and so, you know, now we have the discretion to not revoke. So what do you rely on for that? And we rely on 1154C and that language says no petition shall be approved. And we think in context... But that's approval. We're talking about revocation. Right. I think that's the question. You know, does that language, does it end on the day of approval or does it create continuing obligations that the petition can't maintain the status of being approved after the first day? And so, and I think in context, it does mean the latter thing. And just to give you an example that might help, we have a few examples, but one example is no article shall be approved for publication if there is evidence of plagiarism. I think everyone would understand that if you approve the article of publication and then the next day you find out that there is plagiarism, it'd be very strange to say, well, the rule just says it shouldn't be approved for publication. It's already been approved for publication, so we're just going to let it go ahead and get published. You would say, well, we have to withdraw. We can't publish. And the reason I think that example is helpful is the green, the visa petition is just a document saying you're eligible. So it's just a document saying you're approved for publication. It's not the publication itself. That's getting the green card. And so in a situation where in between those two times, approval of the petition and then going to the agency and getting the green card, the agency figures out it's made a mistake, it's very strange to say, well, the agency can just pretend it hasn't. It can just let you have the document, and it can go ahead and say you are, in fact, eligible for a green card. And it's so ‑‑ Well, but that's ‑‑ Sorry. I mean, I get the government's position as far as I can tell is that you just won't take yes for an answer. You want there to be review rather than review after revocation. And they're saying you can get that. Just apply again. And you'll get exactly what you would have you think you're entitled to, which is judicial review of the decision. What more do you want? Well, I mean, I think that underscores what says census about the government's position. From our perspective, the harm is that it would be as of additional delay. We did refile. It's been two years. Well, they can't give you the years. They can't give you the years back. But you're asking for a particular procedure and a particular level of judicial review. That's your request for relief. And they're saying you can get that. You can get that. They should have given you ‑‑ I mean, yeah, they made a mistake in the first place. But they're letting you go ahead and do what you say you should have ‑‑ they should have done. Well, but at a much greater cost. They're saying you have to go back, file another petition, wait years for that to be adjudicated. And for us, for an immediate family petition, that's harmful. But for other kinds of petitions, it could be really devastating because for other kinds of petitions in a case where they're raised. It seems to me that yours is pretty straightforward. And I'm sure the government is sorry for the years. But it seems to me that that's the type of relief you would get. The relief is not going to be that they approve your application, right? No, the relief is to get judicial review. But for someone, for example, for someone who is in a different, like an employment‑based or other kind of family eligibility category, which their revocation rule governs every single kind of revocation, those people lose their priority date. And if you lose your priority date, as this Court noted in DeSorio, that could be 10 years, 15 years, because the number of green cards that are out there, the number of available green cards, is far smaller than the number of applicants. So there are millions attending. So that's another case that is not like yours, right? Well, I mean, I think that the rule, the revocation rule absolutely governs, and the government I think would accept, absolutely governs that situation as well. And in our situation, we still lose two years. But I think the key point here is, if that's all true, why does the government care about barring judicial review? They think this exact decision was reviewable yesterday when it was a denial. They think it's going to be reviewable tomorrow if we go through the process of refiling. The only difference is clients like mine have to live for years still not knowing whether their family is going to be separated. And that just shows there is no discretion here to protect. There is no reason to deny review of this exact decision. Well, isn't that the argument you're going to make on the merits if you do reapply? I mean, if we do reapply, I think the government's position is they've decided we're in a sham marriage, and they're going to deny. And great, once you've gone through that arduous process, you'll get review. At that point, you get judicial review. Yeah. Well, and that just shows that why they, you know, there is, the why question I think just jumps off the page here on the government side. Why is the government denying judicial review? What possible reason is there to deny judicial review for revocation if they believe that this decision is nondiscretionary and is, in fact, the kind of thing that should easily be subject to judicial review? Maybe they do think it's discretionary, and they just happen to exercise their discretion consistently, which is what I think we would want. I mean, the strange thing about your argument to me is that it seems as though saying that the agency has discretion not to revoke would generally be more favorable to people who are applying, right? That the agency makes a mistake in the first instance. It does not follow whatever the mandatory criteria are for approval, and it gives the person approval. And then they discover that that was a mistake. I would think that the argument made from people who are applying would be, you have discretion to keep the approval in place. You don't have to revoke it. You know, it was your mistake. We've gotten past that stage, so let me just keep going. The implications of your argument is that, no, if they make a mistake, then they actually have to revoke their approval, and that that's nondiscretionary. And that just seems odd to me coming from your side of this argument. Right. But it's no surprise that, you know, all the amici from various organizations and immigration attorneys that work in this field, they've all lined up on our side, because in reality, the government does not believe it has any discretion. It's never exercised any discretion. No one has even made this request, really, to the government, because it doesn't exercise any discretion. And I think maybe the more important point is, as I understand the government's view of what discretion it has to exercise, it is just the discretion to not revoke. I think the government thinks it still has to deny your green card. And so I think that's probably why... Yeah, but that's at later stages. I mean, they have these sort of check-in points at later stages. As you articulated, this is just the beginning of a long process toward getting you a green card. And if things come up in that process, whether they overlap with previous stages or not seems to be neither here or there. The government continues on and allows you to continue on. And if those same factors come up, that could be a reason to deny the green card. It's just odd, I think, to suggest that when we get to this stage, you clear the approval hurdle, which in general I think is positive from the standpoint of the person who is applying. To suggest that the government has to keep going back and deciding whether or not it was right to give you approval to begin with seems to me to be less favorable from that perspective. But it's not, because in practice, the government always, I think, understands itself. And every BIA... Isn't that better than arbitrarily going back and forth? I mean, if the government is consistent in its practices with respect to how it exercises its discretion, isn't that what one would want in a rule of law kind of scenario? It's consistent because... Well, I don't think in a situation where there's discretion. I think it would be problematic if you protect judicial review because there's discretion for the government. The government never exercises discretion, doesn't conceive of itself as really being capable of exercising discretion. And the result of that, of course, is no one gets judicial review. Except for the chief... Well, what if it did? I'm sorry. Go ahead. What if it did? What if it started exercising discretion? Would your case go away? Or what if it had been conducting itself the way Justice Jackson is positing, you know, sometimes revoking it, sometimes not? Then do you have no case? Well, I mean, I think as long as what they'll be able to do then is to allow someone to be eligible for the green card. I think if what they're saying is, we believe that we can just still deny green cards. And we don't believe that the government can do that. So because the only place where this criteria exists, 1154C, is at the petition approval stage. So what a valid petition says, what a non-revoked petition says, is it says, you are eligible for a green card. You have not engaged in a shared marriage. That's something you've not done. That's what it's signifying to the agency. So then I think if the agency says, well, you have that, so you've not engaged in a shared marriage, even though we've separately found that you have, we're going to exercise our discretion to allow you to go ahead into the process and get a green card. That would be a meaningful kind of discretion. But I don't think that's what the government is suggesting is the kind of discretion it has. I think it's saying, we have a shared marriage finding. We're independently allowed to say, we're going to stop your green card. We're allowed to say, we have to, we have to stop you having your green card as a result of that. But what you're allowed to do is hang on to this piece of paper. And this piece of paper now means nothing. Because even though the only significance of the piece of paper is, I'm eligible for a green card, we actually don't think you're eligible for a green card. What if they don't give a reason for revoking it? Do they have to? They have to. How are we supposed to know if it was because they'd concluded it actually was a shared marriage? Right. They have to give a reason under their regulations. That's at 8 CFR 2052C. So it'd be a violation of their own procedures if they didn't give a reason. I think if they abolished all of their own procedures in BIA review, I think we would still have an argument that that was arbitrary. But we're interpreting the statute. I mean, the statute doesn't itself require a reason, right? The statute doesn't require a reason. But I think it'd be very hard for the government to avoid giving a reason. And it might well be arbitrary and capricious if the agency's path can't be discerned. And I'll also say that the government has made this type of argument. In other cases, this court has consistently rejected it. To quote the language in this court's Hawke's decision, such a count your blessings argument is not an adequate rejoinder to the assertion of a right to judicial review under the APA. Counsel, you conceded that 1155 doesn't say mandatorily you have to revoke. Correct? That's correct. So you're asking us to say, because of as a matter of practice, this is what they believe they must do. But I don't even know if the agency has to bother. Meaning, if you posited that if they couldn't use the sham marriage later. But I don't know why not. If the petition wasn't revoked, they could just simply deny you a visa or an adjustment of status because you're not admissible under 1182A6CI because of the fraud bar. But the fraud bar is waivable. You think the fact that they didn't revoke makes it waivable? That makes no sense. Right. I think, and what the low courts have held, is that 1154C is a non-waivable perpetual restriction on someone who has been found to be in a sham marriage. I.e., in that situation, the agency just loses one of the very few restrictions in the Immigration Code that looks like this. It loses all discretion. What do you do with 1182I, which allows the Attorney General to waive the fraud bar if the applicant is the spouse of a U.S. citizen and refusing admission would result in extreme hardship to the citizen? It seems to me that if the government chose, it just hasn't, but that doesn't mean much to me. If it chose, if someone was here, let's say, 50 years, I suspect there's going to be a lot of movement for the government not to revoke on the basis of sham marriage. So the 50-year thing wouldn't happen because this is just that period of time between the petition and... And when the... Right. So, you know, there's obviously 1256 and there's all kinds of rescission provisions. But go ahead to my 1182. Right. I mean, the low courts have held, I think it's been the government's consistent position that 1154C is non-waivable, as in, it doesn't fall under that provision. Now, they can obviously deny on the basis of fraud if they want, but they're not obligated to. And our understanding or our argument is that 1154C... So if they're not obligated to, they can't waive either? Well, your opposing counsel can answer, Michael. Right. And our position is 1154C, that what Congress intended was that is a restriction that is not, that takes away discretion from the government. And they accept that at the petition approval stage. They can't say, well, there's a lot of equities here, we're going to waive... No, that's because the law requires them not to give it. Exactly. And so then... That says nothing about what happens later. And that, but I think that's the nub of the dispute. I mean, I think there's a lot of common ground here. And really the nub of the dispute is, does 1154C apply just on the day of approval or does it extend to the day after? And that's why I think the example I gave is helpful. There are lots of ordinary English contexts where you can, an obligation on the day of approval is logically understood to apply to the next day. Why does it matter whether the government in fact has been exercising discretion? 1252A2B2 strips jurisdiction over decisions Congress specified to be in the agency's discretionary authority. It uses the term authority. So why does practice matter? Oh, I think practice only matters if it informs what the statute requires. And we think that 1154C makes this non-discretionary in this situation, i.e. because the agency has to revoke when it has found a share marriage, it's non-discretionary and then falls outside of what you've got. Well, if you can see that interpretation of the provision that I just mentioned, then what do you do with a very straightforward statutory argument? If you put that together with 1255, you're in a lot of trouble. With 1155? 1155, yes. No, I mean, I think 1155 gives the government a measure of discretion to come up with additional reasons to revoke, but it doesn't mean that they are allowed to ignore the mandatory criteria. It doesn't speak to the question of when they have to revoke. And the government accepts this, by the way, because, you know, they accept that 1154H decisions are reviewable because, of course, if you have, you know, X statute says you have discretion to do all these things, and then another statute says, but you don't have discretion to do this, then clearly that second statute means you don't have discretion to do that second thing. And so the fact that 1155 gives a measure of discretion doesn't mean that every single revocation is discretionary. The question is, is there a separate statutory restriction that prohibits the government from exercising discretion in this situation? And that's why I think it all comes back to our interpretation of 1154C. Well, I know that's the provision you want to talk about, but 1155, it's perhaps an understatement to say that it confers a measure of discretion. It confers about the broadest measure of discretion that you could imagine the Secretary of Homeland Security may at any time for what he deems to be good and sufficient cause. Anything that he deems to be good and sufficient cause seems to fall under that. Well, it allows the agency to come up with lots of additional reasons. It's a way of saying the agency, even in situations where the eligibility criteria have been satisfied, we can come up with additional reasons. We can stop visa petitions coming through. But I think the government's way of reading it means that it allows more visa petitions through. I mean, to use one example, they use the example of Well, we would have to, wouldn't we have to say, wait a minute, it refers to what he deems to be good and sufficient cause. That doesn't govern because it is not good and sufficient to, well, anyway, all right, never mind. Go ahead. I mean, to use the babysitter example we gave in our hypothetical, you can have a situation where the babysitter can, for good and sufficient cause, can take away the iPad, a very broad array of discretion. But you can also have a rule saying no iPad at the dinner table. But it doesn't say, you changed it, you said where the babysitter says for good and sufficient cause, not what the babysitter deems to be. Yeah, for what the babysitter deems to be good and sufficient cause. They have free discretion, and it can be a terrible reason. They can say, oh, you know, you looked at me the wrong way, I'm going to take away the iPad. And the parent couldn't complain. But if the parent has said no iPad at the dinner table and comes home and finds that someone is at the dinner table with the iPad, it would be very strange to say, well, you said for good and sufficient cause, I could take away the iPad in other situations. That's not the kind of discretion that's being spoken to in that situation. And that's what we have here, which, again, routes us back to 1154C. If I understand the argument, it's that we're supposed to ignore the very discretionary language of 1255 because of the very non-discretionary language of 1154C. But the non-discretionary language of 1154C does not pertain to revocations. It pertains instead to the initial approval or denial of a petition. And you're saying, well, how could it be that that wouldn't also pertain to revocations? But there might be good reasons why Congress would have thought, no matter what we demand that you do at the initial stage, once you've already given a petition, there might be reasons to just keep the status quo going. There might be, it might be costly to change. There might be reliance interests, whatever. The decision to revoke is just different from the decision to approve or deny in the first instance. So this language about approving or denying in the first instance doesn't really speak to the decision to revoke, which is instead governed by 1255. I think all of that might be true in a situation where what's being given is something other than just that piece of paper. But the government has been very clear, as longstanding physicians, there's no reliance interest in this piece of paper because it's just, it confers no substantive benefits. All it is, is something that says, you met those criteria. It's all, that's literally the entire value of the paper. And you take it to the next, you take the agency the next day and it says, I met the criteria. And if the government has now decided you don't meet those criteria, then I think it has to take the piece of paper away. And that's why I think the example is a sort of helpful. I don't know what the government will say to that, but it does seem to me that under the statute, if you have an approved petition, you're entitled to certain benefits. So if you have an approved petition, you're entitled to those benefits, even though you might say, oh, the approval was, was, was wrong in the first instance. But the only benefit you're entitled to is the fact that you have that piece of paper that allows you to go apply for the green card. That's, that's literally what that approved petition means. And if the government has said, uh, you're in a sham marriage and we don't actually think that you are able to apply for the, you know, apply for the green card and we're going to deny the green card, probably we have to deny the green card. I think that's what they think, that they have to deny the green card. Then the discretion we're talking about in this case. Well, they have to deny the green card if they've revoked the petition, but they don't have to deny the green card if the person has an approved petition and nothing's happened to it. Well, that's an interesting question. I think that that's a question I think for the government, the government's longstanding position has been that the 1154C sham marriage bar, Congress enacted it. It's one of the very few restrictions like this that is non-waivable. It was such a fundamental thing that they said, your petition shouldn't even get off the ground. Your application should, and it's, and it's, you know, described as one of the most serious and disabling judgments you can have against you. You can, it's perpetual, it's non-waivable, you can never become, you can never get U.S. status. So that's why it's so fundamental. And the government's position, I think, is that, yeah, we are not able to give you the ultimate immigration benefit. If the government says, yes, we can exercise discretion to just let you through the system and get a green card, I think their argument looks different. I don't think they've said that anywhere in their briefs, and that would be contradictory to their longstanding position. And that's all consistent with, in fact, what happens in the real world, which is that in over 50, you know, 50 years, or maybe even 70 years, there has just never been an instance where this purported discretion has ever been exercised. So where this all cashes out is, this means nothing other than taking away judicial review from people who, you know, have this, you know, this very disabling judgment made against them. And in some instances, that means getting kicked back in line, having to wait 10 more years, and the government cannot come up with a single reason why that makes any sense. It agrees that can be reviewed yesterday, it can be reviewed tomorrow. It's the kind of decision that's generally reviewed. Why does it not allow review in this situation? I've never seen a case quite like it. Thank you, Counsel. Justice Thomas? Justice Alito? No? Justice Barrett? Justice Jackson? Yes. Can I just quickly ask about, your client is not in removal, right? No. And we've never held that 1252 applies in the non-removal context. So isn't there at least a threshold issue that, I mean, the Northwest Immigrants' Rights Project amicus raises that. So I didn't know if you wanted to speak to that at all. No, absolutely. I mean, that was the question this Court reserved in Patel. It's a threshold issue that wasn't raised in our case. So, but I think it's absolutely something that this Court can and should reserve. It has enormous ramifications. I mean, I think if you, if one were to hold that both underlying eligibility determinations like this are reviewable, and also that this provision, that the review bar applies in the district courts, that applies to dozens and dozens of provisions across the Immigration Code, administering things like U visas and T visas for victims of trafficking, VAWA self-petitions, the adjustment of various benefits administrations, status adjustments. So it wasn't briefed, though, in this case? It wasn't briefed in this case. So any holding against you would have to make clear that we're reserving that issue? Reserving that issue, the same issue that was reserved in Patel. Thank you. Thank you, Counsel. Ms. Sinzdak? Mr. Chief Justice, and may it please the Court, there were more than 900,000 I-130 visa petitions filed last year, and USCIS granted, denied, or revoked more than 800,000 such petitions. Given this volume, Congress had every reason to streamline judicial review by prohibiting litigation at the revocation stage. And to be clear, the government believes that Congress did prohibit litigation by making revocations discretionary, including in the face of a sham marriage determination. The government does not view a revocation as mandatory in that stage, and I am not aware of a longstanding position of the kind that Counsel suggests. The text is very clear on this. Section 1252 bars review of actions, the authority for which is specified to be in the discretion of the Secretary of Homeland Security, and Section 1155 specifies that the Secretary's authority to revoke visa petitions is discretionary at least three times over, as Justice Alito was noting. It uses the term may, which connotes discretion. It uses the term deems, which fairly exudes discretion. And it uses the capacious term insufficient cause, which calls for a discretionary judgment. Now, I don't hear Petitioner today to be advancing the secondary argument that I think we saw in his briefing with respect to the idea that at least an underlying sham marriage determination might be reviewable, even if the revocation decision itself is not, because the revocation decision is clearly discretionary under Section 1155. And I think that's for good reason. I don't think that this Court has ever suggested that someone can evade a judicial review bar on review of a decision by breaking that decision into its constituent parts. And here, the text of Section 1252A2B2 is very clear, because it says that you, it puts the focus on the nature of the agency's authority. So it says a decision, the authority for which is specified to be in the Secretary's discretion. And any decision that the Secretary is making using his discretionary revocation authority is therefore covered. I welcome the Court's questions. But don't you think it's a bit odd that the underlying determination initially was not discretionary, and now it is being disposed of after the fact in a discretionary way? I do think that you've put your finger on perhaps the oddity of this statute, which is that approval is banned, and that's a mandatory decision, but revocation is discretionary. I think that, as Justice Jackson was suggesting, that is to the benefit, for the most part, of noncitizens, because it allows some discretion on the part of the agency to decide not to revoke when it notices that it has made a mistake in the past. So I agree that's a little bit odd. It is the plain text of the statute, and I think that in the mine run of situations, it's going to be helpful to noncitizens. Ms. Szustak, your friend on the other side suggested that the government has never exercised its discretion to overlook a sham marriage. Is that correct? We do not have a record of the government overlooking a sham marriage. We do not keep records with respect to times that the government... Are you aware of any case? I am not. Okay. The other question I had is, your friend on the other side also suggests that this obligation of approval is ongoing, because you cannot grant a green card either, or any kind of visa relief in the end, if there is a sham marriage. Is that right? No. So there is a... The government has the discretion whether or not to revoke. Then at the green card stage, I believe Justice Sotomayor was alluding to another statute, which is 1182A-6, that says that if the noncitizen has made a misrepresentation in order to get immigration benefits of any kind, then he has no eligibility. But that, as Justice Sotomayor pointed out, is waivable. There can be a waiver. So I think that's the way that the statutes interact. Can you explain that to me a little bit more? Sure. So 1182, again, 1182A... That's non-discretionary as well, A-6, right? It is... It says that the noncitizen is inadmissible, but the way in which it becomes, I suppose you could say discretionary, in that there is a discretionary waiver under 1182I, which says that in an instance where there has been extreme hardship, where there would be extreme hardship to a U.S. citizen, then the government has the discretion to waive 1182A-6's admissibility bar. But other than that carve-out for an effect on a U.S. citizen, the bar is mandatory? That's correct. So I think that's your friend's point, is that throughout the process, a sham marriage is in many cases an absolute non-discretionary bar. To relief. And that's simply incorrect. And you put that together with the fact that government's unable to point to a single circumstance in which it's ever waived the sham marriage requirement. You're starting to look pretty non-discretionary. I think that's the nature of the argument. The question under B-2 is whether Congress has specified that a decision is in the discretionary authority of the Secretary. Right, but that's the question. I mean, you're stating the question rather than giving the answer. So help me with the answer. Sure. The answer is that Section 1155 makes the decision whether to revoke discretionary. So because the statute makes it discretionary, the fact that the agency has always exercised it in one particular direction doesn't have anything to do with the applicability of the review bar. Got it. Can you imagine? I'm sorry. I'm sorry. I'll finish real quick. The cases below, which you cite and rely on, have this broad reading of the bar. But many of them, including the 11th Circuit, also permit review on an allegation of procedural error, including, it seems, procedural error of regulations that the agency's adopted itself. Where do you stand on whether those decisions are reviewable? That's right. There is something of a circuit dispute. It's not implicated here. I think that we think that procedural errors are similarly foreclosed by the discretionary. Even if the government completely abandons its existing procedures, ignores them willy-nilly, that's not reviewable in the government's view. If we're talking about a procedural error, and here I'm setting aside constitutional claims, which I think go at least into a different basket. I'm talking about procedural errors. I think a judicial review bar, the way that it works is to bar claims that the government has made a mistake. So the government makes a mistake by throwing all the papers up in the air and say, we're going to revoke the pile that lands over there, despite all of our fine-tuned regulations. The bar on judicial review applies. I think that when Congress enacts judicial review bars, it assumes that the agency is not going to behave like a monster. I would have thought, but you're telling me that it can't. I'm telling you that Congress has made the decision that it does not think that kind of behavior is going to happen, or at least that it's going to be such a fringe case that the benefits of barring judicial review are going to be worth it. Got it. Thank you. You said that you didn't know of a case in which revocation wasn't the decision, but you also said you didn't know of a policy that made revocation automatic. Is that what you said? Yes. So I think there's a couple of things here. First of all, USCIS does not keep records of times that it decided not to revoke. So I'm not sure that I would be aware if there were these. Okay. I was really asking about the second half of that. You said you were not aware of any policy, that revocation was automatic. That's right. So in all your conversations, which I imagine you had with the people who are implementing this law, they said, we don't have a policy that revocation is automatic. We think that we have discretion. I want to be clear. They believe that they have statutory discretion. The sham marriage bar is not one of the reasons for automatic revocation. Those reasons are set out- I was talking about, in practice, do they think of themselves as having a policy of, yes, of course, we would always revoke, or do they think of themselves as having something like, well, of course, we would usually revoke, but we retain the right to not revoke in certain circumstances. I think that it's exactly what we said in our brief, which is that they do strive to revoke when they determine that there has been a sham marriage determination. They're not required to do so by statute, and that's dispositive with respect to the application of the judicial review bar. But I do think that they are, where they find sufficient evidence, they are revoking. So what you're saying is that there really are no set of circumstances in which they would say, in this case, because of the peculiarities of this case, we're not going to revoke. I can't say that there would never be that circumstance. When I have spoken to them, what they have said is that in general, if they do find sufficient evidence, they will revoke. But let me just— Well, I guess that the in general in that sentence, is it in general, or is it always? Like, when you talk to them, do they say, of course, we always revoke? Well, I think, quite honestly, the problem is that this is being done by individual adjudicators who have been given discretion under the statute. And so what they are telling me is that, to their knowledge, where the evidentiary burden is satisfied, the agency generally is going to revoke if it determines that there's been a sham marriage. But not that the statute requires it. And that's the key question. And I just want to make clear, because I think it's getting a little fuzzy, we're looking at discretionary authority. And so if I can just give kind of my own child hypothetical, if I tell my daughter that she may have dessert after dinner every night, she has discretionary authority to decide whether to have dessert. As a practical matter, she is going to eat dessert every single night. I can assure you of that. But I have given her discretionary authority. And so if there was a judicial review bar, it would cover. But your daughter would be able to tell you, I have a policy of having dessert every night. So I'm asking, do they have a policy of always revoking? I think what you have seen is it's not on automatic grounds for revocation. The agency could not point me to a case where they have decided not to revoke. What I'm concerned about, and I don't want to misrepresent to you, is whether there's some sort of unwritten policy. I don't know whether the adjudicators all sort of sit around and say, of course, because 1154C seemed to have been really, really important to Congress, we really do always revoke. I just don't know. How many decision makers are there? There are many. I do not know the exact number. Do you agree that Boarfa could obtain judicial review by refiling a petition in this case? The government's not going to pop up and say, if he tries to do that, no. That's correct. He might not need to if he does. Sorry, it's Boarfa is a she. She, excuse me. No, my.  She, if she refiles and the agency takes a fresh, and she has refiled, if the agency takes a fresh look at the facts or if she were to submit additional evidence, the agency could, of course, change its mind. But if it did not, then yes, judicial review. Then she could get judicial review at that point. All right. The applicability of the judicial So if we agree with you that the discretionary nature, about the discretionary nature of the revocation provision, would you have any problem with a line that expressly preserves that threshold question? I don't think that it's a threshold question because I think Congress was quite clear here in terms of the language of B, which says that it applies regardless of whether the judgment decision or action is made in removal proceedings. I haven't been able to think of another way to read that line. No, I mean, you, you, you, you think the issue comes out in the government's favor, but clearly it's a threshold question. I mean, we have, we, we, we would have to decide whether 1252 applies. And my concern is that by just jumping to your conclusion, let's say I, for the purpose of this, agree with you that this is a discretionary decision under 1154 or what, or 1155, we only get to precluding judicial review through 1252, correct? In other words, the, the, the judicial stripping, the jurisdiction stripping comes from 1252. That's correct. Now, I don't want to hide the ball because there is jurisdiction stripping in the APA context because the APA bars review of decisions. Yes. Setting that aside, the parties here have been assuming that the jurisdiction stripping is coming from 1252. Correct. And 1252 says you don't have jurisdiction of discretionary decisions. And so the argument here has been about whether or not this is a discretionary decision, but there's a threshold issue because it seems to me, at least I haven't found a case in which we have applied 1252 jurisdiction stripping in the non-removal context. So if we were to suddenly say in agreement with you, this is discretionary and therefore there's jurisdiction stripping under 1252, we would be assuming that 1252 applies in this context. And so I'm asking you, you know, your counsel on the other side says, yes, we're all over here looking at the nature of this is discretionary, but you should at least make clear that there's this threshold issue and preserve it because we have not briefed it. Is the government on board with at least that little, even though I know you think you win. Okay. I will happily take the win in this case with the knowledge that in the future I will win on this other question. Fine. Okay. Thank you. But you don't think we should reserve it, right? I don't think there's any ambiguity in the text. But we have to decide it. I mean, I'm just saying I don't want the answer to this question to necessarily decide. I mean, there's a cert petition I understand that's coming up that's asking just this question. Amicus here says this is a separate question. We don't have to, you all haven't briefed the answer to this question, correct? That's correct. Okay. Justice Gorsuch's hypothetical would give rise to a constitutional challenge, wouldn't it? That if the INS just decided to throw the pile of applications on the floor. I suspect that the non-citizen would raise a due process contention. I think they would then have to deal with Munoz. And I also want to be clear here, there is division in the circuits regarding whether constitutional claims are reviewable in the revocation context, because there is judicial review available after the denial of a visa petition. So this isn't a situation... What's your view on that? The government has not taken a position. The government has no position on whether an individual can raise a constitutional claim about a violation in revocation? A non-citizen certainly can raise a constitutional claim after the denial of a visa petition. After the denial of a visa at the end of this process, which as your friend points out is a revocation decision itself. That's the government's view. No, the government has not taken a position on that. Not taken a view. You're not going to... We don't know. I'm not going to take a position on that. Wait for coming attractions. I would note, Justice... Don't you think that's an important thing for us to know in terms of interpreting the scope of this to say if we're going to insulate substantive and procedural questions, arbitrary and capricious type decisions, throwing the papers up in the air. And perhaps that's what happened here. We don't for all we know. Don't you think it's important for us to understand that whether you'd really even bar constitutional questions? Justice Gorsuch, the 11th Circuit itself has treated these as separate issues because it has actually held that constitutional claims are reviewable. But of course, we're up on a defending a decision in which it said that these claims are not reviewable. If you agree that it's reviewable at the end of the process, the visa process, why wouldn't the same be true here? This question, the sham marriage determination, would it be reviewable at the end of the process? If the agency does not reach a different outcome, yes. Okay. So it's reviewable at the beginning. It's reviewable at the end. You're just saying this one's not reviewable in the middle. That's correct. And on constitutional claims, we don't know. Wait. That's correct. Okay. Got it. Thank you, counsel. Justice Thomas. Justice Alito. Anything further? No. Justice Jackson. Oh, Justice Barrett. Thank you, counsel. Thank you. Rebuttal, Mr. Dagerson. Thank you, Your Honor. Four quick points. So I think the key thing that we heard, again, was that they strive to revoke. And what strive to revoke, I understand, means is we try to find everyone. And when we find someone, we revoke. In the real world, they are interpreting and administering the statute in exactly the way we're describing. So why? And again, that's not going to be enough. But I think it's good evidence that, in fact, this is the right way to read the statute. And the right way to read the statute is the way we've been describing, which is 1154C doesn't just apply on the first day. It applies the day after. And ordinary English often connotes that. So as I gave the example, no article should be approved for publication if there's evidence of plagiarism. I can give you a few more examples. No person shall be approved for TSA pre-check if they lied on the application. No ballot proposition shall be listed if there are less than 100 signatories. No lawyer shall be licensed if they've In all of these situations, no one seriously thinks that the obligation is on the first day and no further. That if they find out you lied on your TSA application, that they don't have to revoke approval. You can still go on and be approved. Or that a lawyer can just continue to be licensed. Or that the ballot proposition has to go ahead and be voted on in the future, even though, in fact, there were not enough signatories. Routine error correction that happens the next day is subsumed within the idea that something can't initially be approved. And ordinary English reflects that. And as this court said in Campos Chavez, there's no canon of construction against reading, using common sense and construing laws saying what they obviously mean. That's what this obviously connotes. That's why the government administers it this way. The government believes that Congress enacted a sham marriage bar that was this fundamental restriction that was so important, an application couldn't even get off the ground. The idea that then, the very next day, Congress would have thought, actually, it's optional. The agency has discretion. It can get to do whatever it wants. And the thing which triggers the agency's discretion is the agency made a mistake. Because the agency made a mistake, suddenly it's important for the agency to get discretion. And if you think that reliance interests are at stake, the government has always said there are no reliance interests in this document. And if you care about reliance interests, then you want our results. Because if people have been in the system for a while, the result here of accepting the government's view is that those are the people that are going to have their revocations not judicially reviewed and get kicked back to the beginning of the process. And I do think the question about the fraud bar is important. The government is basically saying, well, we can, we have discretion to administer this at the back end. But Congress never told us we have to. Congress never said the sham marriage is mandatory. But its longstanding position has been that the sham marriage bar is mandatory, not for revocations. They get to revoke. But we can't give you benefits. In the real world, we can never give you benefits. Because that's obviously what Congress meant. Congress thought this is the threshold requirement. Of course Congress would have thought it would carry over to the day after approval and would carry over further into the process. On the constitutional question issue, there is the logic of the government's position because there is no preservation for constitutional or legal claims. We're not in a removal proceeding. So subparagraph D doesn't apply. So as I understand the logic of the government's position is that it is allowed to violate the Constitution with impunity in the context of revocation and that it's fine because you can go ahead and refile later. But this is my final point. Refiling later is not an adequate substitute. It is, I've never known a situation where years of delay is considered to just be equivalent, especially when you're living under uncertainty of whether your family is going to be unified. And for lots of people, that can be, as this Court said in De Soria, a decade, a decade and a half, two decades of just not, of, you know, being, waiting in line, suddenly having your petition revoked, going back to the beginning and starting again. That is a life-altering, life-destroying result. So there are real stakes in this case, but there are no stakes on the government side. There's no streamlining. If, you know, the government, the streamlining is a product of the government's own view in this case. If there was judicial review straight out, we never would have had to file in the first place. So there is literally no reason to support the government, no logical reason to support the government's view in this case. Thank you, Counsel. The case is submitted.